## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS | ) | **Consolidated Under** |
| LIABILITY LITIGATION (No. VI) | ) | **MDL Docket No. 875** |
| | ) | |
| **CERTAIN PLAINTIFFS** | ) | **Case No. 2:02-md-00875** |
| | ) | |
| **VS.** | ) | **Maritime Docket (MARDOC)** |
| | ) | |
| **CERTAIN DEFENDANTS** | ) | |

**RULE 12(b) MOTION TO DISMISS OF DEFENDANT MATSON NAVIGATION
COMPANY, INC. (sometimes incorrectly named MATSON LINES AND/OR MATSON
S.S. LINES), on its own behalf and as successor in interest to THE OCEANIC
STEAMSHIP COMPANY
(LACK OF PERSONAL JURISDICTION;
INSUFFICIENCY OF SERVICE OF PROCESS)**

Pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, Matson Navigation

Company, Inc. (sometimes incorrectly named Matson Lines and/or Matson S.S. Lines), on its

own behalf and as successor in interest to The Oceanic Steamship Company ("Defendant"),

moves to dismiss all actions against it (identified on the attached case list – Attachment A),

because it is not subject to personal jurisdiction in the U.S. District Court in which these actions

were filed. The grounds for the motion are set forth more fully in the attached memorandum in

support and the declarations of Elizabeth Sloan White – Attachment D.

Alternatively, Defendant moves, pursuant to Rule 12(b)(5), for dismissal from certain

Group 1 actions for insufficiency of service of process (identified on the attached case list –

Attachment E), because it was not properly served with process in such cases. The grounds for

the alternative motion also are set forth more fully in the attached memorandum in support and

the declaration of Pamela Zarlingo – Attachment F.

Harold W. Henderson (# 0019056)
Richard C. Binzley (# 0006969)
Susan K. Dirks (# 0081630)
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH   44114-1291
(216) 566-5500 (phone)
(216) 566-7970 (fax)
Hal.Henderson@ThompsonHine.com
Dick.Binzley@ThompsonHine.com
Susan.Dirks@ThompsonHine.com
*Attorneys for Defendant*
*Matson Navigation Company, Inc. (sometimes*
*incorrectly named Matson Lines and/or Matson*
*S.S. Lines), on its own behalf and as successor in*
*interest to The Oceanic Steamship Company*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: ASBESTOS PRODUCTS | ) **Consolidated Under** |
| LIABILITY LITIGATION (No. VI) | ) **MDL Docket No. 875** |
| | ) |
| **CERTAIN PLAINTIFFS** | ) **Case No. 2:02-md-00875** |
| | ) |
| **VS.** | ) **Maritime Docket (MARDOC)** |
| | ) |
| **CERTAIN DEFENDANTS** | ) |

**MEMORANDUM IN SUPPORT OF RULE 12(b) MOTION TO DISMISS OF
DEFENDANT MATSON NAVIGATION COMPANY, INC. (sometimes incorrectly named
MATSON LINES AND/OR MATSON S.S. LINES), on its own behalf and as successor in
interest to THE OCEANIC STEAMSHIP COMPANY
(LACK OF PERSONAL JURISDICTION; INSUFFICIENCY OF SERVICE OF
PROCESS)**

## PART I. – LACK OF PERSONAL JURISDICTION

## INTRODUCTION

Defendant, a non-resident of Ohio **and** Michigan, moves to dismiss the claims against it

because the Court lacks personal jurisdiction over Defendant.  Specifically, Plaintiffs cannot

meet their burden of proving that their out-of-state service of process upon Defendant complied

with the respective forum's long-arm statute.  Additionally, exercising personal jurisdiction over

Defendant in these cases would violate Defendant's Constitutional Due Process rights as it is

neither subject to general jurisdiction nor specific jurisdiction in these matters.

## HOW THESE CASES CAME TO BE FILED PRIMARILY IN OHIO: PLAINTIFFS'
## COUNSEL'S SPURIOUS "NATIONAL CONTACTS" THEORY

As will be shown below, Defendant had no jurisdictional contacts with Ohio, including

no vessel operations on the Great Lakes and thus not in Ohio waters. Yet plaintiffs' counsel filed

tens of thousands of lawsuits against non-resident shipowners in the U.S. District Court for the

Northern District of Ohio, without any concern whether shipowner defendants had sufficient contacts with Ohio to be subject to personal jurisdiction there, on the basis of plaintiffs' counsel's "national contacts" theory. Plaintiffs' counsel contended that, in federal question cases, a federal court has personal jurisdiction over any defendant that had "sufficient contacts with the country" as a whole, even if the defendant had no contacts with Ohio. (*In re Ohio Asbestos Lit.*, Plaintiffs' Memorandum in Opposition to Defendants' Motions to Dismiss, at 3-10, June 19, 1989, copy attached as Attachment B.)

In a hearing on October 31, 1989, U.S. District Judge Thomas Lambros (N.D. Ohio) summarily rejected plaintiffs' "national contacts" theory and recognized that the court must address personal jurisdiction motions on the basis of each defendant's contacts with the forum State. (*In re Maritime Docket*, Proceedings on October 31, 1989, at 56:11-19, excerpt attached as Attachment C.) Despite judicial warning that plaintiffs could not establish personal jurisdiction over non-residents under the "national contacts" theory, plaintiffs' counsel continued filing cases for over two decades thereafter in the U.S. District Court for the Northern District of Ohio without any regard to whether defendants, including this moving Defendant, had any jurisdictional contacts with Ohio.[1]

---

[1] In addition to filing large numbers of maritime asbestos cases in the U.S. District Court for the Northern District of Ohio, plaintiffs' counsel (the Jaques Firm) also filed a substantially smaller number of maritime asbestos cases in the U.S. District Court for the Eastern District of Michigan, and a still smaller number of such cases in the Territorial Court for the U.S. Virgin Islands (some of which were removed to the U.S. District Court for the Virgin Islands). Given the overwhelming preponderance of MARDOC cases that originated in Ohio, this memorandum will focus specifically on Defendant's lack of jurisdictional contacts with Ohio and on the Ohio long-arm statute. However, to the extent cases were filed against Defendant in Michigan or the Virgin Islands, Defendant lacked jurisdictional contacts with those forums as well, and similar conclusions apply with respect to the long-arm statutes of those forums. Further, the Constitutional Due Process argument herein applies fully to all cases transferred from the district courts in Ohio, Michigan or the Virgin Islands for MDL pretrial processing.

## STATEMENT OF FACTS

### A.    No General Corporate Contacts with Ohio

Defendant is not, and never has been, a resident of the State of Ohio:

- Defendant was incorporated in the State of California, and reincorporated in the State of Hawaii, (Declaration of Elizabeth Sloan White, ¶ 3, Attachment D);

- Defendant's main office and principal place of business is in Honolulu, Hawaii, and it also has corporate offices located in Oakland, California, (*id.* at ¶ 4);

- Defendant never had any offices or physical facilities in Ohio, (*id.* at ¶ 7);

- Defendant was never licensed to do business in Ohio, (*id.* at ¶ 5);

- Defendant was never registered to conduct business in Ohio, (*id.* at ¶ 5);

- Defendant never had an agent or representative for service of process in Ohio, (*id.* at ¶ 6);

- Defendant never had any personal or real property in Ohio, (*id.* at ¶¶ 8-9);

- Defendant never maintained a telephone listing in Ohio, (*id.* at ¶ 14);

- Defendant never maintained any bank accounts in Ohio, (*id.* at ¶ 15);

- Defendant never had any loans to or from any Ohio banking institutions, (*id.* at ¶ 16);

- Defendant never had any financial ties to Ohio, (*id.* at ¶ 17); and

- Defendant never paid taxes to the State of Ohio, (*id.* at ¶ 18).

### B.    No Vessel Operations in Ohio Waters

In addition to Defendant's lack of general contacts with Ohio described above,

Defendant's maritime trade never involved any operations on the Great Lakes or Ohio waters.[2]

---

[2] The Ohio River on Ohio's southern boundary is irrelevant for jurisdictional analysis for two reasons. (1) Navigation by oceangoing vessels is only possible as far upstream in the Mississippi River as Baton Rouge, Louisiana, about 135 miles north of New Orleans. UNITED STATES COAST PILOT (National Ocean Survey, U.S. Dept. of Commerce), Vol. 5 (40th ed. 2012) at 351, available online at http://www.nauticalcharts.noaa.gov/nsd/coastpilot/files/cp5/CPB5_E40_C08_20120617_0009_WEB.pdf (accessed 9/20/12). Thus, oceangoing vessels, such as those operated by Defendant,

(*Id.* at ¶ 10.)  Rather, Defendant's trade is/was restricted to ocean operations.  (*Id.* at ¶ 11.)

Defendant's vessels did not and have not visited ports in Ohio or any waters contiguous to the

State of Ohio.  (*Id.* at ¶ 10.)

Indeed, beyond this litigation, Defendant has no contacts with the State of Ohio.

## LAW AND ARGUMENT

**I.    Legal Standards for Motion to Dismiss for Lack of Personal Jurisdiction.**

**A.    In General**

When deciding a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the

court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of

the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).  However, once

a defendant raises lack of personal jurisdiction as a defense, the plaintiff bears the burden of

proving, through affidavits or other competent evidence, sufficient contacts with the forum state

to establish personal jurisdiction.  *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d

Cir. 1996). When the district court does not hold an evidentiary hearing, the plaintiff must

establish only a *prima facie* case of personal jurisdiction. *Eurofins Pharma US Holdings v.*

*BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).  The burden then shifts to the

defendant to establish that asserting jurisdiction is unreasonable. *See Burger King Corp. v.*

*Rudzewicz*, 471 U.S. 462, 477, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

A federal court has personal jurisdiction over a non-resident defendant to the extent

authorized by the law of the state in which that court sits.  *Mellon Bank (East) PSFS, Nat'l Ass'n*

*v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).  The court first determines whether there is a

---

physically were unable to navigate the Mississippi and Ohio Rivers as far north as Ohio. (2) The
boundary between Ohio and Kentucky is the low-water mark on the northerly side of the Ohio
River as it existed in 1792 when Kentucky was admitted to the Union. *Ohio v. Kentucky*, 444
U.S. 335, 100 S. Ct. 588 (1980). Thus, even tug/barge navigation on the Ohio River adjacent to
Ohio is within Kentucky waters, not Ohio waters.

statutory basis for the exercise of jurisdiction, and then analyzes whether the non-resident

defendant has sufficient minimum contacts with the forum state. *Eurofins, supra*, 623 F.3d at

155. This inquiry ensures that "the exercise of jurisdiction comport[s] with 'traditional notions

of fair play and substantial justice'" under the Due Process Clause. *Remick v. Manfredy*, 238

F.3d 248, 255 (3d Cir. 2001).

**B.    In Deciding Personal Jurisdiction, an MDL Transferee Court Must Apply the Law
        of the Transferor Forum.**

In deciding personal jurisdiction motions, an MDL transferee court must apply the law of

the transferor forum. *See In re WellNx Mktg. & Sales Practices Litig.*, 2010 U.S. Dist. LEXIS

96582 at *24 (D. Mass. September 15, 2010) ("In an MDL case, personal jurisdiction is derived

from the transferor court"); *Papst v. Konica Minolta Holdings (In Re Papst Licensing GMBH &

Co. KG Litig.)*, 602 F. Supp. 2d 10, 14 (D.D.C. 2009) ("In multidistrict litigation such as this, the

transferee court must apply the law of the transferor forum to determine personal jurisdiction");

*Plummer v. Geostar Corp. (In Re ClassicStar Mare Lease Litig.)*, 2008 U.S. Dist. LEXIS

61161 at *3-5 (E.D. Ky. August 1, 2008) (same); *Waterbury Hosp. v. U.S. Foodservice, Inc. (In

Re U.S. Foodservice Inc. Pricing Litig.)*, 2009 U.S. Dist. LEXIS 117403 at *30 (D. Conn.

December 15, 2009) ("In multidistrict litigation…, the transferee court must apply the law of the

transferor forum to determine issues of personal jurisdiction, and may exercise personal

jurisdiction only to the same extent as the transferor court"); *City of Portsmouth v. Amerada

Hess Corp. ("MTBE" Prods. Liab. Litig.)*, 2005 U.S. Dist. LEXIS 12843 at *3-4 (S.D.N.Y. June

24, 2005) ("In multi-district litigation, the law of the state where the action was first filed

governs" as to personal jurisdiction); *In re: Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,

343 F. Supp.2d 208, 218 (S.D.N.Y. 2004) ("In an MDL proceeding, the forum state is 'the

district court where the action was originally filed, and therefore that state's law must be applied'" to personal jurisdiction) (citation omitted).

In ruling on Defendant's Motion in these MARDOC cases, the Court must follow Ohio law regarding the basis for establishing personal jurisdiction since the cases were filed in the Northern District of Ohio and subsequently transferred to this Court for consolidated multidistrict pretrial proceedings.

## II.     The Standard for Establishing Personal Jurisdiction in Ohio.

To exercise personal jurisdiction over a foreign corporation, a court applying Ohio law must follow a two-step analysis: "(1) whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction and, if so, (2) whether the exercise of jurisdiction would deprive the non-resident defendant of the right to Due Process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81, 930 N.E.2d 784, 790 (2010); *see also Miller v. Toyota Motor Corp.*, 2008 U.S. App. LEXIS 16386 at *4-5 (6th Cir. 2008) ("First we must determine whether Ohio law authorizes jurisdiction.  If it does, we must determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment" (internal citations omitted)).  Plaintiff has the burden of proving that jurisdiction exists. *Bird v. Parsons,* 289 F.3d 865, 871 (6th Cir. 2002) ("The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists.").

As shown below, Plaintiffs cannot meet their burden of establishing either prong of the two-step analysis.  Therefore, the Court cannot exercise personal jurisdiction over Defendant, and Plaintiffs' claims against Defendant should be dismissed.

6

III.   **The Ohio Long-Arm Statute is Not Satisfied: Plaintiff's Claims Against Defendant Do Not Arise Out of Any Contacts Defendant Had With Ohio and, Therefore, the Court Lacks Personal Jurisdiction Over Defendant.**

Ohio Revised Code § 2307.382, Ohio's long-arm statute, establishes the grounds for exercising personal jurisdiction over non-resident defendants:

(A)   A court may exercise personal jurisdiction over a person who acts directly or by agent, as to a cause of action arising from the person's:

(1)   Transacting any business in this state;
(2)   Contracting to supply services or goods in this state;
(3)   Causing tortious injury by an act or omission in this state;
(4)   Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(5)   Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;
(6)   Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;
(7)   Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits or in the commission of which he is guilty of complicity;

(8)   Having an interest in, using, or possessing real property in this state;
(9)   Contracting to insure any person, property, or risk located within this state at the time of contracting.

\*     \*     \*

(C)   *When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.*

O. R.C. § 2307.382(A), (C) (emphasis added).  Federal courts interpreting Ohio's long-arm statute have emphasized the importance of establishing that a plaintiff's injuries "arise from" defendant's contacts with Ohio. *Burnshire Dev., L.L.C. v. Cliffs Reduced Iron Corp.*, 198 Fed. Appx. 425 (6th Cir. 2006) ("One distinction between [Ohio's] long-arm statute and the United

States Constitution is rooted in the 'arising from' clause of § 2307.382(C), which requires that the defendant's actions in the state must be the proximate cause of the injury complained of; a 'but for' relationship is insufficient under Ohio law"); *see also Otte v. Hampson*, 2006 U.S. App. LEXIS 5007 at **16 (6th Cir. 2006).

There are no allegations in the Complaints that Plaintiffs' alleged injuries were sustained "in this state," *i.e.*, in Ohio.[3] Therefore, subsections (4), (5), and (6) of O.R.C. § 2307.382 are inapplicable. Nor do the Complaints contain any allegations to support application of subsections (1), (2), (3), (7), (8), or (9) of the statute. Indeed, Plaintiffs fail to make any jurisdictional allegations about Defendant's specific activities that purportedly injured Plaintiffs. As a result, Plaintiffs have not met their burden of pleading facts to prove that the Court has personal jurisdiction over Defendant under the Ohio long-arm statute.

Aside from Plaintiffs' failure to allege anything as to Defendant that would satisfy the Ohio's long-arm statute, Plaintiffs have failed to specifically identify how any of their claims arise from Defendant's purported contacts with Ohio. Nor can they. Defendant never had ***any*** contacts with Ohio, let alone a contact that would have resulted in injury to Plaintiffs. Defendant's maritime trade never involved any operations on the Great Lakes or Ohio waters. (Declaration of Elizabeth Sloan White, ¶ 10, Attachment D.) Rather, Defendant's trade is/was restricted to ocean operations. (*Id.* at ¶ 11.) Defendant's vessels did not and have not visited ports in Ohio or any waters contiguous to the State of Ohio. (*Id.* at ¶ 10.) Except for this litigation, Defendant has no contacts with the State of Ohio.

---

[3] Plaintiffs' boilerplate complaints contain no jurisdictional allegations or reference to Ohio: "Plaintiff is a career Merchant Mariner who spent his life as a seaman aboard divers American ships, plying waters, domestic and foreign, port-to-port throughout the world; ... [where he was "constantly exposed" to friable asbestos] while in many waters and ports-of-call ..." (Living Jones Act complaint ¶ 2; Deceased Jones Act complaint ¶ 3 (which uses the substitute phrase "Plaintiffs' decedent was a career Merchant Mariner".)

Because Defendant's vessels never were in Ohio ports, Plaintiffs never could have been exposed to asbestos aboard any of Defendant's vessels while those vessels were in Ohio ports or waters.  Plaintiffs' claims, therefore, do not arise out of any contacts by Defendant with Ohio and jurisdiction may not be asserted over Defendant by reason of Ohio's long-arm statute, O.R.C. § 2307.382.

## IV.     The Exercise of Personal Jurisdiction Would Violate Defendant's Due Process Rights.

Although Plaintiffs' inability to meet the requirements of Ohio's long-arm statute is dispositive, assuming for the sake of argument that the statute could be satisfied, exercising personal jurisdiction over Defendant would nonetheless violate Defendant's Constitutional Due Process rights.

A plaintiff may satisfy the Due Process requirement by showing that it is appropriate for the Court to exercise either "general" or "specific" jurisdiction over the non-resident defendant. *See Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U. S. _, 131 S. Ct. 2846, 2851, 2011 U.S. LEXIS 4801 at ***9 (June 27, 2011):

> A court may assert *general* jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are *so "continuous and systematic" as to render them essentially at home* in the forum State. (Citation omitted.) *Specific* jurisdiction, on the other hand, depends on an "affiliatio[n] between the forum and the underlying controversy," principally, *activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation*. (Citations omitted.) In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of "issues deriving from, or connected with, the very controversy that establishes jurisdiction." (Citation omitted.) (Emphasis added.)

### A.     The Court does not have general jurisdiction over Defendant because Defendant was not "at home" in Ohio (or Michigan).

In *Goodyear*, the United States Supreme Court limited assertion of general jurisdiction over non-residents to cases where the defendant's contacts with the forum state are so continuous and extensive that the defendant essentially is "at home" in the forum state. *Goodyear, supra*,

131 S. Ct. at 2851, 2854; *see also Arlington Industries, Inc. v. Electronic Custom Distr., Inc.*,

2011 U.S. Dist. LEXIS 105009 (M.D. Pa. Sept. 15, 2011) ("General jurisdiction allows a court to

'hear any and all claims against [a party] when their affiliations with the State are so 'continuous

and systematic' as to render them essentially at home in the forum State", citing *Goodyear*).

In *Goodyear*, two individuals sustained fatal injuries as a result of their involvement in a

bus accident in France. *Id.* at 2851. Alleging that the accident was caused by defective tires,

plaintiffs sued multiple Goodyear entities in a North Carolina court – where plaintiffs resided.

*Id.* at 2851-52. The North Carolina Court of Appeals held that the North Carolina court had

general jurisdiction over the Goodyear entities because those entities placed their tires "in the

stream of interstate commerce without any limitation on the extent to which those tires could be

sold in North Carolina." *Id.* at 2852.

The Supreme Court reversed, holding that the North Carolina courts did not have general

jurisdiction over the non-resident defendants because plaintiffs had failed to show that the

entities' contacts with North Carolina were sufficient to make the entities "at home" in North

Carolina:

> For an individual, the paradigm forum for the exercise of general jurisdiction is
> the individual's domicile; for a corporation, it is an equivalent place, one in which
> the corporation is fairly regarded as at home.

*Id.* at 2853-54 (citing Brilmayer et al., A General Look at General Jurisdiction, 66 Texas L. Rev.

723, 728 (1988) ("identifying **domicile**, **place of incorporation**, and **principal place of business**

as 'paradig[m] bases for exercise of general jurisdiction'") (emphasis added). The Supreme Court

also noted the non-resident defendant's lack of other contacts with North Carolina, including that

the company did not have a place of business, employees, or bank accounts in North Carolina

and did not design, manufacture, or advertise their products in North Carolina. *Id.* at 2852.

10

In support of its holding, the Supreme Court specifically contrasted the facts of *Goodyear* from *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 72 S. Ct. 413 (1952), where the Supreme Court permitted the exercise of general jurisdiction over a non-resident defendant because the defendant's activities were confined to the forum state, with the company's president maintaining an office there, the company kept its files there, and the company's business affairs were supervised from the forum. *Id.* at 447-448. The Supreme Court in *Goodyear* noted, that, unlike the defendant in *Perkins*, petitioners were "in no sense at home in North Carolina." *Id.* at 2857.

Like *Goodyear*, Plaintiffs have presented no evidence that Defendant was, or ever has been, "at home" in Ohio. They have not because they cannot. Indeed, Defendant was a California corporation, reincorporated in Hawaii, with its main office and principal place of business in Honolulu, Hawaii, as well as corporate offices in Oakland, California. Defendant has never (1) operated vessels in Ohio waters, (2) owned any facility in Ohio, (3) had any sales persons, agents or employees of any type stationed in Ohio, (4) had bank accounts in Ohio, (5) affirmatively advertised in Ohio, (6) been licensed or registered to do business in Ohio, (7) owned any personal or real property in Ohio, (8) had an agent or representative for service of process in Ohio, (9) paid taxes to the State of Ohio, (10) maintained a telephone listing in Ohio, or (11) had any financial ties with Ohio. (Declaration of Elizabeth Sloan White, ¶¶ 5-18.) By the Supreme Court's definition of general jurisdiction, Defendant is a legal stranger to Ohio – certainly not "at home" there. Therefore, the Court does not have general jurisdiction over Defendant in this case.

**B.    The Court lacks specific jurisdiction over Defendant because Plaintiff's claims do not arise from any contact of Defendant with Ohio (or Michigan).**

Plaintiff has not met the requirements for establishing specific jurisdiction either.  In a companion case to *Goodyear*, the Supreme Court elaborated on specific jurisdiction:

> There is also a more limited form of submission to a State's authority for disputes that "arise out of or are connected with the ***activities within the state***."  Where a defendant "purposefully avails itself of the privilege of conducting activities ***within the forum State***, thus invoking the benefits and protections of its laws," it submits to the judicial power of an otherwise foreign sovereign to the extent that power is exercised in connection with the defendant's activities touching on the State.  In other words, submission through contact with and ***activity directed at a sovereign*** may justify specific jurisdiction ***"in a suit arising out of or related to the defendant's contacts with the forum***."

*J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787-88, 2011 U.S. LEXIS 4800 (June 27, 2011) (citations omitted) (emphasis added). Thus, if a plaintiff does not establish that his claim ***arises out of*** defendant's contacts with the forum state, the court cannot exercise specific jurisdiction.

As discussed above regarding Ohio's long-arm statute, Plaintiffs cannot produce any evidence that their claims arise, in any way, out of any activities of Defendant within Ohio.  As described above, Defendant never had ***any*** vessel contacts with Ohio.  Thus, it would be impossible for Plaintiffs to establish that any maritime asbestos claim against Defendant "arises out of" Defendant's contacts with Ohio.  Specific jurisdiction, therefore, cannot be exercised.

## CONCLUSION

Plaintiffs have not alleged, let alone proven, that their claims against Defendant arise out of any contact by Defendant with Ohio. As a result, the Court lacks personal jurisdiction over Defendant under both Ohio's long-arm statute and the specific jurisdiction theory of the Due Process clause of the Constitution.   Nor have they set forth any evidence that Defendant is "at

home" in Ohio, and thus Defendant is not subject to general jurisdiction in Ohio. Therefore,

Plaintiffs' claims against Defendant should be dismissed for lack of personal jurisdiction.

## PART II – INSUFFICIENT SERVICE OF PROCESS

### INTRODUCTION

Neither the Court nor Defendant has any record of service of process upon Defendant in

the cases identified on Attachment E.  Defendant's counsel requested that Plaintiffs' counsel

produce a copy of the certified mail receipt evidencing service upon the Defendant. Plaintiffs

have refused or neglected to do so.  Because Defendant was not properly served with process,

Defendant must be dismissed from the listed actions for insufficient service of process.

### STATEMENT OF FACTS

Beginning in 1986, large numbers of maritime asbestos cases were filed by the Jaques

Admiralty Law Firm in the United States District Court for the Northern District of Ohio.

Plaintiffs' counsel typically served process by certified mail, return receipt requested, as

authorized by state law for serving a summons.

As a result of the burden on the Clerk's office from the extremely heavy volume of paper

documents presented for filing, that court entered an order prohibiting the filing of most

documents in the MARDOC cases, including proofs of service, answers to complaints, etc.

Consequently, for most MARDOC cases, there is no evidence of record on the court dockets

establishing proof of service upon defendants. Where a defendant has no record of being served

in a case, the sole party who may have evidence of service of process is Plaintiffs' counsel, the

Jaques Firm.

On January 3, 2011, this Court posted a schedule identifying the remaining active

defendants in the MARDOC cases. (Declaration of Pamela Zarlingo, ¶ 4, Attachment F.)

Counsel for Defendant, Thompson Hine, reviewed the schedule and identified 2,181 instances in

which counsel had no record that: (a) process was served on the defendant pursuant to Fed. R. Civ. P. 4; or (b) the claim was referred to Thompson Hine for defense. (*Id.*)

On March 23, 2011, Thompson Hine provided the Jaques Firm a spreadsheet which identified the 2,181 actions by name, case number, and corresponding plaintiff. (*Id.* ¶¶ 5, 6; Ex. 1.) In addition, counsel for Defendant acknowledged Plaintiffs' offer to identify the certified mailing receipt number evidencing proof of service and produce a copy of the certified mail return receipt as to the 2,181 defendants. (*Id.* ¶ 6; Ex. 1.) However, Defendant's counsel insisted that even where the Jaques Firm was able to identify a receipt number, a copy of the certified mail receipt or proof of service would be needed. (*Id.*)

On or about May 20, 2011, counsel for Defendant received a letter from the Jaques firm responding to the March 23 requests. (*Id.* ¶ 7.) Attached to counsel's May 20 letter was a spreadsheet which listed, where available, (1) a certified mail receipt number; (2) a signature date; and/or (3) an original answer date. (*Id.*) However, the spreadsheet did not indicate who signed the particular certified mail receipt, many categories were left blank, and no green cards were produced at that time. (*Id.*)[4]

On July 29, 2011, counsel for Defendant sent a letter to the Jaques Firm requesting production of the certified mail return receipts or other proof of service as to 1,560 defendants, including the Defendant at issue here. (*Id.* ¶ 9; Ex. 3.) Included with the letter was an updated spreadsheet listing the 1,560 defendants. (*Id.*) Defendant's counsel also requested production of

---

[4] On July 27, 2011, counsel for Defendant requested that the Jaques firm stipulate to dismissal of 606 defendants in instances where the Jaques Firm was unable to produce any evidence of a certified mailing receipt number, a signature date, nor an original answer date. (*Id.* ¶ 8; Ex. 2.) On August 4, 2011, counsel for the Jaques firm agreed to stipulate to the dismissal, without prejudice, of 224 of the 606 defendants. (*Id.* ¶ 11; Ex. 4.)

copies of any answers where the Jaques firm had indicated a date of a filed answer. (*Id.* ¶ 9; Ex. 3.)

On August 4, 2011, the Jaques firm notified Defendant's counsel that they had located "green cards" for 3 defendants. (*Id.* ¶ 11; Ex. 4.)[5] However, on August 10, 2011, the Jaques firm produced only 2 certified mail return receipts to establish service of process. (*Id.* ¶ 13; Ex. 5.) No proof of service and no certified mail return receipt has been produced evidencing that Defendant was properly served with the Summonses and Complaints in these matters. (*Id.* ¶¶ 14-15.) Without evidence of proper service, the Court cannot exercise jurisdiction over Defendant in the particular case. Accordingly, Defendant should be dismissed from these actions.

## LAW AND ARGUMENT

It is axiomatic that a legal action cannot stand without service of process because "[j]urisdiction of the person is obtained by the service of process." *Cooper v. Reynolds*, 77 U.S. 308, 316-17 (1870). *See Ayres v. Jacobs & Crumplar, P.A.*, 99 F.3d 565, 569 (3d Cir. 1996) ("The failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case."). Consequently, the Federal Rules of Civil Procedure require that a defendant be served with a copy of the complaint and summons to effectuate jurisdiction over a defendant. A Rule 12(b)(5) motion is the proper vehicle for challenging the sufficiency of the service of process, i.e., "the mode of delivery or lack of delivery of the summons and complaint." 5B Wright & Miller, *Federal Practice & Procedure: Civil* § 1353 (2004) at 334.

---

[5] The 3 defendants included: Maritime Overseas Corporation served with Leon Lybert's Complaint on 6/29/92; Trinidad Corporation served with Kurt J. Fischer's Complaint on 12/5/00; and American Trading & Production Corp. served with Edward M. Hayes's Complaint on 6/25/92. (*Id.* ¶¶ 12-14; Exs. 4, 5.) However, the green card relating to Mr. Lybert's claim was allegedly in storage and has not been produced. (*Id.*)

"Unless service is waived, proof of service must be made to the court. Except for service by a United States marshal or deputy marshal, proof must be by the server's affidavit." Fed. R. Civ. P. 4(l)(1).

"When a defendant challenges the sufficiency of service of process, the plaintiff must make a prima facie showing of proper service, which allows the court to assert personal jurisdiction over the defendant." *Rosen v. Mystery Method, Inc.*, No. 07 C 5727, 2008 U.S. Dist. LEXIS 10461 at *2 (N.D. Ill. Feb. 13, 2008). Where a plaintiff is unable to come forward with evidence of service, the defendant cannot be a party to the action. In other words, a complaint should be dismissed as to any party who was not served with a copy of the complaint and summons. *See Moore v. Carteret Police Dep't*, 254 F. App'x 140, 141 n.1 (3d Cir. 2007) ("Defendant Christopher Ely, who was identified in the complaint, is not a party to the suit because he was never served with the complaint. As a general rule, unserved defendants are not parties within the meaning of Fed. R. Civ. P. 54(b)", *citing United States v. Studivant*, 529 F.2d 673, 674 n.2 (3d Cir. 1976)).

Defendant has requested that Plaintiff come forward with evidence that Defendant was served with process in these actions, but Plaintiffs have refused or neglected to do so. Furthermore, there is no evidence in the record that Defendant was ever properly served with the Complaint or Summons or filed an answer. Defendant has no record of the same. Plaintiff, as "the party asserting the validity of service[,]" bears the burden of establishing that Defendant was properly served. *Grand Entm't Group*, *supra*, 988 F.2d at 488 (citation omitted). Because no evidence of service exists, the Complaints should be dismissed as to Defendant. See *Sims v. CS First Boston Corp.*, No. 95 C 7018, 1996 U.S. Dist. LEXIS 3153, at *7 (D. Ill. March 14,

16

1996) (granting 12(b)(5) motion to dismiss where defendant never served with summons because "[s]ervice of summons is not a mere technicality").

To meet Plaintiff's burden, Plaintiff must produce a copy of the certified mail receipt evidencing service of process upon Defendant. Simply reciting a receipt number and signature date from an alleged certified mailing is not sufficient to carry Plaintiff's burden. First, there is no evidence that the certified mailing was properly addressed to Defendant. Second, there is no indication that the party who signed for the alleged certified mailing was an employee or agent of Defendant or that anybody at all signed for the mailing. Last, there is no evidence that the receipt corresponding to the receipt number recited by Plaintiff's counsel actually exists or that it corresponded to the mailing of the Summons and Complaint. Simply put, there is no evidence that Defendant ever received a copy of the Complaint and Summons as required by the Federal Rules. Short of producing the actual certified mailing receipt, Plaintiff cannot establish that a copy of the Complaint and Summons was delivered to Defendant. *See Pennington v. Wells Fargo Bank, N.A.*, No. 11-CV-2896, 2012 U.S. Dist. LEXIS 38989, at *4 (E.D. Pa. March 21, 2012) (Pollak, J.) (finding that defendant had not been properly served where "the record in the present case does not contain any evidence of a receipt signed by the defendant or his authorized agent", as required to establish proper service under Pennsylvania law); *Rushing v. United States Postal Service*, 1991 U.S. Dist. LEXIS 18105, at *12 (D. La. Dec. 13, 1991) ("Neither the record nor plaintiff's opposition provides any evidence of service, thus the plaintiff's action could also be dismissed pursuant to Rule 12(b)(5)"). *See also Lampe v. Xouth, Inc.*, 952 F.2d 697, 701 (3d. Cir. 1991) (granting Rule 12(b)(5) motion when "[p]laintiff. . . offered no proof that the signatures [on the return receipts] belong[ed] to defendant's authorized agents").

Rule 4(m) allows a plaintiff only 120 days from the filing of the complaint to provide a defendant with a copy of the complaint and summons. Fed. R. Civ. P. 4(m). With years having passed since Plaintiff filed its Complaint, the window for service has undoubtedly closed. Without actual evidence of service of process, the Court should dismiss the listed actions against Defendant pursuant to Rule 12(b)(5), Fed. R. Civ. P.

## CONCLUSION

There is no evidence that Defendant was properly served with process in the cases listed. Thus, these actions must be dismissed for insufficient service of process.

Harold W. Henderson (# 0019056)
Richard C. Binzley (# 0006969)
Susan K. Dirks (# 0081630)
THOMPSON HINE LLP
3900 Key Center, 127 Public Square
Cleveland, OH  44114-1291
(216) 566-5500 (phone)
(216) 566-7970 (fax)
Hal.Henderson@ThompsonHine.com
Dick.Binzley@ThompsonHine.com
Susan.Dirks@ThompsonHine.com
*Attorneys for Defendant*
*Matson Navigation Company, Inc. (sometimes*
*incorrectly named Matson Lines and/or Matson*
*S.S. Lines), on its own behalf and as successor in*
*interest to The Oceanic Steamship Company*

11700794.1

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2012, a copy of the foregoing paper was filed with the Court and served electronically this day and is available for viewing from the Court's ECF (Electronic Case Filing) system to all counsel of record and to those registered to receive a Notice of Electronic Filing for this case.

Notice of this filing will be sent to all counsel of record via the Court's ECF system.

*Harold W. Henderson*

*Attorneys for Defendant*
*Matson Navigation Company, Inc. (sometimes incorrectly named Matson Lines and/or Matson S.S. Lines), on its own behalf and as successor in interest to The Oceanic Steamship Company*